UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONI P. STICKLE,

       Plaintiff,

v.                                 Case No. 1:07-cv-230
                                 Hon. Janet T. Neff

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on November 17, 1967 and completed high school (AR 59, 97).[1] Plaintiff alleges that she has been disabled since November 25, 2002 (AR 59). She had previous employment as a crew member at a fast food restaurant (AR 93). Plaintiff identified her disabling conditions as asthma, arthritis, dislocated knee cap, pulled right arm muscle, high blood pressure, anxiety attacks, shortness of breath and diabetes (AR 92). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on July 5, 2006 (AR 13-19). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

_____

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases.  *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).  "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health*

*and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).  *See Brooks v. Sullivan*,  No. 90-5947,

1991 WL 158744 at *2 (6th Cir. Aug. 14,1991) ("[t]o establish medical eligibility for SSI, plaintiff

must show either that he was disabled when he applied for benefits . . . or that he became disabled

prior to the Secretary's issuing of the final decision on this claim . . . 20 C.F.R. §§ 416.335,

416.330").

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  Following the five steps, the

ALJ initially found that she has not engaged in substantial gainful activity at any time relevant to the

decision (AR 15).  Second, the ALJ found that she suffered from "the following severe combination

of impairments: asthma, osteoarthritis of the left knee, and obesity" (AR 15).  At the third step, the

ALJ found that plaintiff did not have an impairment or combination of impairments that met or

equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR

16).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity

(RFC):

> to perform work activity that involves standing and/or walking for two hours out of
> an eight-hour day; sitting for six hours out of an eight hour day; lifting and/or
> carrying up to 20 pounds occasionally and 10 pounds frequently; no overhead lifting
> with her right upper extremity; an option to sit or stand as needed; and limited to
> simple, repetitive tasks.

(AR 17).  The ALJ found that plaintiff could not perform her past relevant work (AR 17).

At the fifth step, the ALJ determined that plaintiff had the RFC to perform a range

of sedentary work (AR 18).  The ALJ found that there are a significant number of jobs in the

regional economy (the State of Michigan), i.e., an aggregate of 21,000 clerical positions and

4

manufacturing assembly jobs (AR 18).[2]  Accordingly, the ALJ determined that plaintiff was not

under a "disability" as defined by the Social Security Act and entered a decision denying benefits

(AR 18-19).

## III.  ANALYSIS

Plaintiff raised two issues on appeal.

### A.    The ALJ gave invalid reasons for rejecting plaintiff's reported symptoms.

First, plaintiff contends that the ALJ improperly evaluated her claim of disabling pain

in the left knee.  An ALJ's evaluation of a claimant's pain is admittedly inexact. *Jones v. Secretary*

*of Health and Human Servs.*, 945 F.2d 1365 (6th Cir. 1991).   As the Sixth Circuit noted in *Jones*:

> The measure of an individual's pain cannot be easily reduced to a matter of
> neat calculations.  There are no x-rays that can be taken that would objectively show
> the precise level of agony that an individual is experiencing.  Hence, in evaluating
> the intensity and persistence of pain, both physicians and laymen alike, must often
> engage in guesswork.

*Id.* at 1369.  Despite the inexact nature of measuring a claimant's pain,  the ALJ must nevertheless

evaluate the alleged pain and determine whether the claimant suffers from disabling pain.

While it is well-settled that pain may be so severe that it constitutes a

disability, a disability cannot be established by subjective complaints of pain alone.   "An

individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of

disability."  *Cohen v. Secretary of Department of Health and Human Servs.*, 964 F.2d 524, 529 (6th

Cir. 1992), quoting 42 U.S.C. § 423(d)(5)(A) (emphasis added).  Rather, objective medical evidence

that confirms the existence of pain is required.  *Shavers v. Secretary of Health and Human Services*,

---

[2]  The vocational expert testified that a person with plaintiff's limitations could perform
"approximately 9,000 unskilled manufacturing assembly, sorting, grading, checking, fabrication and
packaging," and "approximately 12,000 unskilled clerical, information clerk, ID checker, cashier" (AR 485).

839 F.2d 232, 234-235 (6th Cir.1987).  In *Duncan v. Secretary of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986),  the Sixth Circuit fashioned a two-prong test for evaluating an alleged disability based upon pain.  *See Felisky v. Bowen*, 35 F.3d 1027, 1037-1039 (6th Cir. 1994) (the *Duncan* analysis is a "succinct form" of the Social Security Administration's guidelines for use in analyzing a claimant's subjective complaints of pain as set forth in 20 C.F.R. § 404.1529).

To meet the first prong of the *Duncan* test, the claimant must present objective evidence of an underlying medical condition.  *Duncan*, 801 F.2d 847 at 853.  In order for a claimant to meet the second prong of the *Duncan* test  "(1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain."  *Id.*

In her disability report, plaintiff stated that she can only walk short distances and that "[m]y knee just hurts like the dickens" (AR 92).  At the administrative hearing, plaintiff complained of left knee pain, apparently arising from the way her knee cap "rides" or "tracks" (AR 465-67).  The ALJ characterized plaintiff's knee impairment as follows: "[a]lso in evidence is documentation of mild arthritis of the left knee cap, along with her allegations of 'slipping' of the knee cap, which when considered in combination with her obesity, makes this combination severe" (AR 15).  Although the ALJ identified the left knee impairment, his decision does not discuss this impairment in any detail (AR 15).   For example, the ALJ did not discuss plaintiff's diagnosis, treatment or symptoms of the patellofemoral syndrome of the left knee (AR 162-64) nor did the ALJ address her alleged pain under either § 404.1529 or the *Duncan* test.  Rather, the ALJ merely stated that plaintiff's "knee impairment, even in combination with her obesity, does not limit her mobility as

required by any of the muscoluskeletal listings" and that "[h]er musculoskeletal problems have been found to be mild" (AR 17).

The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). It is unnecessary for the ALJ to address every piece of medical evidence. *See Heston*, 245 F.3d at 534-35 (ALJ's failure to discuss a doctor's report was harmless error because the reviewing court should consider all of the evidence in the record). Nevertheless, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *quoting Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984). Here, the court is unable to perform a meaningful review of the ALJ's decision because the ALJ gave only a cursory review of plaintiff's claims regarding her left knee. Accordingly, this matter should be reversed and remanded to the Commissioner for a review of this claim.

> **B.    The hypothetical question to the vocational expert (VE) failed to incorporate plaintiff's asthma limitations.**

Next, plaintiff complains that the ALJ's hypothetical question posed at the fifth step of the sequential evaluation failed to include limitations arising from her asthma. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a

7

vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

The ALJ found that plaintiff provided substantial medical evidence of "presentation with and treatment for asthma over a substantial period of time" (AR 15). For example, plaintiff was treated in the emergency room for asthma exacerbation on August 17, 2004 and January 3, 2006 (AR 303-04, 417). The record also includes evidence of situations that apparently trigger plaintiff's asthma attacks. In November 2001, plaintiff reported that her asthma symptoms increase with "stressors at work" (AR 400). Then, during the summer of 2002, plaintiff reported that she had asthma attacks when the air conditioner was broken at the fast food restaurant (AR 391, 393). At that time, plaintiff reported that "heat and humidity at work may be setting off her asthma" (AR 397).

In addition, plaintiff testified at the administrative hearing that certain fumes trigger her asthma attacks:

Q       Anything in particular that triggers the asthma attacks?

A       I can just sit down and it'll just flare up. I don't have to be doing anything,

        It's just automatic.

Q       So it's not related to exertion?

A       No.

Q     But what about certain fumes, smoke --

A     Yeah.

Q     -- does --

A     Yeah.  That really bothers it.

Q     Any particular types of fumes?

A     Cleaning products and smoke. . .

(AR 470).

The ALJ concluded that the asthma, in combination with other factors, constituted a "severe impairment" at step two of the five-step of the sequential process.  It is well established that a  severe impairment finding at step two of the sequential process does not automatically translate into a functional limitation.  *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) ( the step two "severe impairment" requirement "has been construed as a *de minimis* hurdle in the disability determination process.  Under the prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience").  Nevertheless, the ALJ recognized that plaintiff had substantial medical evidence of treatment for asthma, and noted her emergency room prednisone treatments in August 2004 and January 2006 (AR 15-16).  It would appear that the need for such treatments would interfere with plaintiff's ability to perform basic work activities.[3]

Despite the medical evidence of plaintiff's asthma, and the evidence of possible asthma triggers such as heat, humidity, cleaning products and smoke, the ALJ's hypothetical

---

[3] In minimizing the effect of plaintiff's asthma as "mild and intermittent," the ALJ noted that "[i]n January 2003 she asked her doctor for  an 'off-work slip' due to her asthma, and the doctor declined saying she should be working" (AR 16).  The ALJ's summary is not entirely accurate.  It appears that the doctor rejected plaintiff's request for a slip on January 24, 2003, but filled out a slip on January 28, 2003 (AR 379).

question posed to the VE did not include any type of respiratory or environmental limitations with respect to the asthma (AR 485).   It is certainly possible, if not probable, that some of the manufacturing and clerical jobs identified by the VE would be precluded by environmental factors such as heat, humidity and fumes. Accordingly, this matter should be remanded to the Commissioner for an evaluation of possible environmental limitations related to plaintiff's asthma and the effect of those limitations on other work that plaintiff can perform.

### IV.   Recommendation

I   respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for (1) a re-evaluation of plaintiff's claims regarding her left knee, and (2) a re-evaluation of limitations caused by plaintiff's asthma.


Dated:  January 8, 2008                              /s/ Hugh W. Brenneman, Jr.
                                                     HUGH W. BRENNEMAN, JR.
                                                     United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).